**SUPERIOR COURT**
OF THE

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
TELEPHONE (302) 255-0626

February 20, 2023

Beth Deborah Savitz, Esquire
Deputy Attorney General
820 North French Street
Wilmington, DE 19801

Michael Heyden, Esquire
1201 North King Street, Suite B
Wilmington, DE 19801

Re:  *State of Delaware v. Derrick Stevens*
     **Case ID No. 2203012725**

Dear Counsel:

This is the Court's determination following the suppression hearing in the above matter on February 17, 2023. For the following reasons, Defendant's Motion to Suppress is **DENIED**.

**Facts[1]**

The facts involve two confidential informants. During the third week of March 2022, a confidential informant ("C.I. 1") told Detective Matthew Jones of the Delaware State Police's Governor's Task Force that Defendant Derrick Stevens ("Defendant") conducts illegal sales of heroin and crack cocaine, drives a black Jaguar sedan, and stays at motels.[2]

After receiving this information, Detective Jones corroborated some of the information, mainly that Defendant and his co-defendant/girlfriend, Alexis Wierzbicki, were staying in Room 309 at the Red Roof Plus in Newark, Delaware.[3]

---

[1] The recitation of facts is presented from the suppression hearing on February 17, 2023 and corresponding pleadings submitted for the Court's review by the State and Defense counsel.
[2] State's Response, Ex. A. Probable Cause Affidavit, at 5, ¶ 1.
[3] *Id.* at 5, ¶ 2.

The room was listed under Wierzbicki's name.[4] Surveillance was established in the Red Roof Plus area, wherein law enforcement observed a black Jaguar sedan parked in the parking lot.[5]

On March 23, 2022, Detective Jones met with another confidential informant ("C.I. 2") to conduct a controlled purchase.[6] Detective Jones testified that while C.I. 2 was in the detective's vehicle, the detective first verified that C.I. 2 did not have any money or illegal contraband on his person, and then supplied him/her with money.[7] In the presence of Detective Jones, C.I. 2 called a person whom the police believed was Defendant and was instructed to go to Room 309.[8]

Law enforcement had established a surveillance platform to include five or six other officers from the Governor's Task Force with a 360-degree view of C.I. 2.[9] The Red Roof Inn's room entrances were visible from this surveillance platform, including Room 309. The officers observed C.I. 2 walk to the third floor, enter and exit Room 309, and make no other contact with any other persons or rooms.[10] Detective Jones and the officers never lost sight of the C.I. 2, except when he/she entered Room 309.[11] C.I. 2 confirmed that he/she met with Defendant in Room 309 and exchanged the money given to her/him by the officers for crack cocaine from Defendant.[12] The substance from this controlled buy later tested positive for crack cocaine.[13]

Detective Jones set forth the above facts in the probable cause affidavit and obtained a nighttime search warrant for Room 309.[14] The affidavit did not state whether the confidential informants were past proven reliable or whether C.I. 1 had any firsthand knowledge of the offenses.[15] The police executed the warrant and searched Room 309, where they found cocaine, heroin, two firearms, and documents belonging to Defendant.[16]

---

[4] *Id.*
[5] *Id.*
[6] *Id.* at 5, ¶ 3.
[7] *Id.*
[8] *Id.*
[9] Detective Matthew Jones' Testimony (Del. Super. Feb. 17, 2022).
[10] State's Response, Ex. A. Probable Cause Affidavit, at 5, ¶ 3.
[11] Detective Matthew Jones' Testimony (Del. Super. Feb. 17, 2022).
[12] State's Response, Ex. A. Probable Cause Affidavit, at 5, ¶ 3.
[13] *Id.*, at 5, ¶ 3.
[14] *See* State's Response, Ex. A. Probable Cause Affidavit.
[15] *See id.*
[16] *Id.*, at 2, ¶ 5.

While Detective Jones left the scene to obtain the search warrant, the police then observed and stopped Defendant and Wierzbicki, who were walking toward the black Jaguar sedan parked in the parking lot.[17] The police searched Defendant's person and did not find any drugs or contraband.[18] The police also searched the black Jaguar sedan and did not find any drugs or contraband.[19] Defendant and Wierzbicki were detained and handcuffed.[20] Both became irate and disorderly and Detective Michael Macauley of the same task force determined it would be best to remove Defendant from the parking lot.[21]

Detective Macauley then told Defendant and Wierzbicki that they were going to obtain a nighttime search warrant unless, instead, they consented to a search of Room 309.[22] Both refused to give consent, and Defendant state, "take me to jail."[23] Detective Macauley, then read Defendant his *Miranda* warning.[24] While Detective Macauley transported Defendant to the police station, Defendant made incriminating statements.[25] Further, while in a holding cell, Defendant made incriminating statements to Wierzbicki and an unknown individual.[26]

Defendant and Wierzbicki are charged with two counts of Drug Dealing, two counts of Possession of a Firearm During the Commission of a Felony, two counts of Possession of a Firearm by a Person Prohibited, and one count of Conspiracy Second Degree.[27] Defendant is also charged with two counts of Possession, Purchase, Ownership, or Control of a Firearm by a Person Prohibited.[28]

## Party Contentions

Defendant moves to suppress all evidence seized by the police. First, he argues a violation under the fourth Amendment as to the search warrant. The bases are two-fold: the confidential informant was not proven reliable, and the police were

---

[17] Defendant's Motion to Suppress, at 2.
[18] *Id.*
[19] *Id.*
[20] Detective Michael Macauley's Testimony (Del. Super. Feb. 20, 2023).
[21] *Id.*
[22] *Id.*
[23] *See* Defendant's Motion to Suppress, at 3; State's Response at 9, ¶ 22–24.
[24] Detective Michael Macauley's Testimony (Del. Super. Feb. 20, 2023).
[25] *Id.*
[26] *Id.*
[27] D.I. 58.
[28] D.I. 58.

3

not present when the confidential informant conducted the controlled purchase. He further argues a violation of his *Miranda* rights under the fifth Amendment as to all incriminating statements made as "fruits of the poisonous tree,"[29] arguing that he invoked his constitutional right when he said, "take me to jail." Wierzbicki does not challenge the validity of the warrant.[30]

The State maintains the search was lawful. It argues sufficient probable cause exists in the four corners of the search warrant and that the C.I. 1's information was corroborated by the initial surveillance and C.I. 2's controlled-buy evidence that confirmed the purchase and cocaine. And the State further argues where there was no custodial interrogation under *Miranda,* the Fifth Amendment was not implicated.

## Standard of Review

### I.    Search Warrant

Under the U.S. and Delaware Constitutions, a search warrant may only be issued upon demonstrating probable cause.[31] To determine whether a search warrant affidavit establishes probable cause, Delaware Courts use the "four-corners" test.[32] The search warrant must be supported by a sworn affidavit that establishes sufficient allegation of cause for the issuance of the warrant.[33] "An affidavit in support of a search warrant need only 'set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place.'"[34]

"[A] magistrate may find probable cause when, considering the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[35]   "[A] determination of probable cause by the issuing magistrate will be paid great deference by a reviewing court and will not be invalidated by a hypertechnical, rather than a common sense, interpretation of the

---

[29] Defendant's Motion to Suppress, at 4.
[30] State's Response, at 3.
[31] U.S. Const. amend. IV; Del. Const., art. 1, § 6; *Anderson v. State*, 249 A.3d 785, 795 (Del. 2021) (citations omitted).
[32] *Anderson*, 249 A.3d at 795 (citing *Valentine v. State*, 207 A.3d 566, 570 (Del. 2019)).
[33] 11 *Del. C.* §§ 2306–07; *see also Valentine*, at 570.
[34] *Loper v. State*, 234 A.3d 159, 2020 WL 2843516, at *2 (Table) (Del. June 1, 2020).
[35] *Anderson*, 249 A.3d at 795 (Del. 2021) (quoting *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006)).

4

warrant affidavit."[36] When a search warrant is challenged, the defendant bears the burden of proving that the challenged search was not lawful.[37]

## II.    Rights Under *Miranda v. Arizona*

The United States Supreme Court established in *Miranda v. Arizona* that a person's Fifth Amendment privileges are triggered when subjected to custodial interrogation.[38] Here, there is no question that Defendant was handcuffed and in custody. The question is whether there was interrogation.

**Discussion**

## I. The Affidavit in Support of the Search Warrant for the Motel Room Set Forth Sufficient Probable Cause.

Defendant argues that the facts in this case fall squarely within *State v. Spady*.[39] They do not.

In *Spady*, a confidential informant (C.I.) told a detective that the defendant and another individual were selling crack cocaine and heroin at their apartment.[40] That C.I.'s information was not corroborated by any surveillance or investigation.[41] In *Spady,* the detective observed the C.I. enter and exit the front door of an apartment building.[42] The detective's only investigation was the C.I.'s verification of the defendant's identity.[43] The Superior Court granted suppression, primarily where law enforcement failed to verify that the C.I. bought the cocaine and heroin from the defendant. The detective was not present during the controlled buys and merely watched the C.I. enter and exit the front door of a building.[44] The building had two businesses on the first level and three apartments on the upper levels—all of which were accessible from the front door—the C.I. could have gone to any of those places.[45]

---

[36] *Id.* (quoting *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984)).
[37] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005).
[38] *Miranda v. Arizona,* 384 U.S. 436, 467–68 (1966).
[39] *State v. Spady*, 2018 WL 4896335 (Del. Super. Ct. Oct. 8, 2018).
[40] *Id.* at *1.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.* at *3–4.
[45] *Id.* at *1.

*Spady* is distinguishable. The Court finds the facts here are more akin to *Loper v. State*,[46] where the Supreme Court validated the search where that affidavit included three confidential informants and corroborating police surveillance.[47] Similarly here, the affidavit for the search warrant for Room 309 set forth information obtained from two confidential informants and corroborating police surveillance. The information from C.I. 1 was corroborated by the police's own investigation—Defendant's girlfriend rented Room 309 under her name, the black Jaguar sedan was indeed found in the motel's parking lot, and C.I. 2 made a controlled buy.

Unlike *Spady,* here, the controlled buy was observed by various police officers on a surveillance platform with 360-degree visual and never lost sight of the C.I. except when he/she walked into Room 309, the very room he/she was directed to go to for the drug transaction. He/she was checked prior to walking into the room and was given money to make the buy. He/she came out without the money and presented to the police with what was later tested for crack cocaine. The affidavit further noted that C.I. 2 did not make any contact with any other persons during the observation of C.I. 2's controlled buy.

Defendant fails to meet his burden that the search warrant is invalid. The Court finds the magistrate had sufficient probable cause to issue the warrant that focused on what would be found in Room 309.

## II. Defendant's Miranda Rights Were Not Violated.

Defendant next argues that the statements made by Defendant while having conversations with the police officers he was handcuffed must be suppressed because the police did not give him a *Miranda* warning.[48] He is incorrect.

Although Defendant was in custody during his detention, the only question that the officer asked was whether he would consent to a search of Room 309. The question called for a yes or no answer. This question was not meant to elicit any incriminating statements and his next comments, without prompting were made voluntarily, namely "take me to jail." Notably, once Defendant made this voluntary

---

[46] *Loper v. State*, 234 A.3d 159, 2020 WL 2843516 (Table) (Del. June 1, 2020).
[47] *Id.* at *2.
[48] Defendant's Motion to Suppress, at 3.

statement, he was read his *Miranda* warnings.[49]

Nothing in this record suggests that police conducted an interrogation, nor does Defendant claim as such. Instead, he argues that once he said, "take me to jail," in response to whether he would consent to a search of Room 309, that this was an invocation, and all further questioning should have stopped. He offers no case law to support that this was an invocation. Even if he had properly invoked his right to counsel or remain silent, on this record, it is clear that any statements that he made in the vehicle after he was given his *Miranda* warnings were similarly voluntary, not prompted by any questions from police. Lastly, any statements he made at the station to his co-defendant girlfriend and an unknown individual are also not in response to custodial interrogation. Thus, there was no custodial interrogation, and therefore no *Miranda* violation.

Therefore, Defendant's Motion to Suppress is **DENIED.**

/s/ Vivian L. Medinilla
Judge

cc:     Prothonotary

---

[49] State's Response, at 9, ¶ 23.